# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

ANJUAN HENRY,

                   Petitioner,            :    Case No. 3:19-cv-207

    - vs -                             District Judge Thomas M. Rose
                                         Magistrate Judge Michael R. Merz

NORM ROBINSON, Warden,
  London Correctional Institution,

                                    :
                   Respondent.

---

# REPORT AND RECOMMENDATIONS

---

This is a habeas corpus action brought *pro se* by Petitioner Anjuan Henry to obtain relief from his convictions in the Common Pleas Court of Clark County on charges of drug possession and trafficking (Petition, ECF No. 1, PageID 1.) On this Court's Order (ECF No. 3), Respondent has filed the State Court Record (ECF No. 14) and a Return of Writ (ECF No. 15). Petitioner has filed a timely Reply (ECF No. 17), making the case ripe for decision.

**Litigation History**

On June 14, 1999, the Clark County, Ohio, Grand Jury indicted Henry on one count of Fleeing and Eluding in violation of Ohio Revised Code § 2921.331(B)) (Count 1); one count of Receiving Stolen Property in violation of Ohio Revised Code § 2913.51) (Count 2), and one count of Possession of Crack Cocaine (exceeding 100 grams) in violation of Ohio Revised Code §

1

2925.11 with a Major Drug Offender specification (Count 3). (Indictment in Case No. 99-CR-296, State Court Record, ECF No. 14, Exhibit 1, PageID 89). On November 1, 1999, the Clark County Grand Jury indicted Henry on two counts of Trafficking in Drugs in violation of Ohio Revised Code § 2925.03 (Counts 1-2). (Indictment in Case No. 99-CR-584, State Court Record ECF No. 14, Exhibit 2, PageID 91).

The cases were consolidated (Entry, State Court Record, ECF No. 14 Exhibit 4, PageID 97), and tried on May 15, 2000, with the parties agreeing that only the possession of cocaine charge from Case No. 296 and the trafficking charges from Case No. 584 would be tried. Henry was convicted on all three counts and sentenced to nineteen years in prison in Case 296 and four years each on the trafficking charges in Case 584, all to be served consecutively, for an aggregated sentence of twenty-seven years (Judgment Entry, State Court Record, ECF No. 14, Exhibit 7, PageID 102-04).

Henry took a direct appeal to the Ohio Second District Court of Appeals, which reversed and remanded. *State v. Henry*, Case No. 2000-CA-80, 2002-Ohio-391 (Ohio App. 2nd Dist. Feb. 1, 2002) ("*Henry I*"). On remand, Henry was convicted of possession of crack cocaine with a major drug offender specification and sentenced to seventeen years, consecutive to any sentence that might be imposed in Case 594. In that case, Henry then pleaded no contest to the two trafficking counts with an agreed sentence of five years each, but to be concurrent with the Case 296 sentence (Judgment Entry, State Court Record, ECF No. 14, Exhibit 10, PageID 118). The court of appeals affirmed. *State v. Henry*, Case Nos. 2003-CA-47, 2003-CA-88, 2005-Ohio-4512 (Ohio App. 2nd Dist. Aug. 19, 2005) ("*Henry II*"). Henry did not appeal to the Supreme Court of Ohio.

After several other filings not relevant to the instant habeas corpus petition, on April 5, 2016, Henry filed a Motion for Leave to File a Delayed Motion for New Trial in Case 296 (State

Court Record, ECF No. 14, Ex. 24, PageID 189 *et seq.*).  In it he claimed he had learned in February 2016 that his trial attorney, Daniel L. O'Brien, had "before and during defendant's June 2003 jury trial," been having a "romantic affair" with Erica Bibbs, described in the Motion as Henry's ex-fiancee and the mother of Henry's two children.  *Id.* at  PageID 190.  He alleged this created a conflict of interest which deprived him of his Sixth Amendment right to effective assistance of counsel.  The trial court denied the Motion and Henry appealed (State Court Record, ECF No. 14, Exhibits 29-30, PageID 208-11).  The Second District remanded for a hearing on whether Henry should be permitted to file a delayed motion for new trial.  *State v. Henry*, 2017-Ohio-7426, 96 N.E.3d 1123 (Ohio App. 2nd Dist. 2017) ("*Henry III*").

In parallel with the new trial proceedings in Case 296, Henry filed on April 5, 2016, a "Delayed Petition to Vacate a No Contest Plea and Set Aside Judgment of Conviction" in Case 584, making the same allegations about the affair.  The trial court denied the petition and Henry appealed.  Eventually the Second District ordered the trial court to treat the matter as a petition for post-conviction relief under Ohio Revised Code § 2953.21.  *Henry III*, 2017-Ohio-7426, ¶¶ 19, 24.

In the possession case (Case No. 296), the trial court held the ordered evidentiary hearing on February 15, 2018, at which the sole witness was Erica Bibbs.  The trial court then allowed the delayed motion for new trial to be filed and held a hearing on that motion April 23, 2018, at which no witnesses were presented.  The trial court thereafter denied the delayed motion for new trial on May 29, 2018 (Entry, State Court Record, ECF No. 14, Ex. 72).  Meanwhile in the trafficking case (Case No. 584), the trial court denied post-conviction relief on June 19, 2018.  *Id.* at Ex. 74.

Henry appealed both decisions.  After consolidation, the Second District affirmed.  *State v. Henry,* 2019-Ohio-1256, 134 N.E.3d 843 (Ohio App. 2nd Dist. 2019) ("*Henry IV*").  The Supreme Court of Ohio declined to exercise appellate jurisdiction.  *State v. Henry*, 2019-Ohio-

2261 (2019).

Henry then filed the instant habeas corpus petition, pleading the following grounds for relief:

> **GROUND ONE:** The State trial court violated Petitioner's Fifth and Fourteenth Amendment rights to due process when it sua sponte reconsidered a Defense witness's previously favorable credibility determination (in connection with new trial proceedings).
>
> **Facts in Support:** On February 20, 2018 (subsequent to February 2018 new trial proceedings) the State trial court judged that Petitioner credibly demonstrated, by clear and convincing proof, that he was unavoidably prevented from discovering the evidence of an affair between his then-fiancée and trial counsel (during representation). On May 29, 2018, (in a separate entry), the State trial court sua sponte determined that the same affidavits and testimony that were the basis of his February judgment lacked credibility.
>
> **GROUND TWO:** The State trial court violated Petitioner's Fifth and Fourteenth Amendment right to due process when it overruled Petitioner's new trial motion, which showed that trial counsel labored under an actual conflict of interest, and also showed that trial counsel's representation was adversely affected.
>
> **Facts in Support:** In Petitioner's new trial motion he demonstrated that an actual conflict of interest resulting from an affair between trial counsel and then-fiancée adversely affected trial counsel's representation. Specifically, Petitioner showed that trial counsel's failure to move for a new trial based on the affair amounted to adverse performance. Parenthetically, neither the State trial court, nor state appellate court, addressed Petitioner's argument that said failure on the part of trial counsel established adverse performance.
>
> **GROUND THREE:** The State trial court violated the Petitioner's Fifth and Fourteenth Amendment right to due process when it overruled Petitioner's petition for post-conviction relief, which showed that trial counsel's non-disclosure of an affair with petitioner's then-fiancée infected the voluntary nature of his no-contest plea.
>
> **Facts in Support:** Petitioner's post-conviction petition showed (via credible affidavits and testimony) that his no contest plea was

involuntary due to an actual and undisclosed conflict of interest that petitioner's trial counsel labored under.

(Petition, ECF No. 1, PageID 15-16).

# Analysis

## Failure to State a Claim on which Habeas Corpus Relief Can Be Granted

With respect to all three of Henry's Grounds for Relief, Respondent asserts that they do not state a claim upon which habeas corpus relief can be granted because they do not claim a violation of the United States Constitution which has been recognized by the federal courts (Return, ECF No. 15, PageID 775-77).

Petitioner begins his Reply asserting that the Second District's April 5, 2019, decision "was based on an unreasonable determination in light of the evidence presented in the state court proceedings," thus invoking the standard for reviewing a state court decision enacted in 28 U.S.C. § 2254(d)(2) (ECF No. 17, PageID 797). He then proceeds to argue the merits of his new trial motion. *Id.* at PageID 797-807. He then turns to Respondent's arguments on cognizability.

As to Ground One, Henry does not assert that it states a federal constitutional claim (Reply, ECF No. 17, PageID 808. As to Ground Two, he asserts that denial of a new trial motion can be so egregious as to deny a defendant a fair trial which states a claim under the Sixth and Fourteenth Amendments. *Id.* at PageID 809-12. As to Ground Three, he asserts it is not procedurally defaulted and that he is entitled to relief on the merits. *Id.* at PageID 812-14.

Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780

(1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); accord: *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825) (Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018) (Thapar, J., concurring)).

Habeas relief may be available where a violation of state law "amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution." *Cristini v. McKee*, 526 F.3d 888, 897 (6th Cir. 2008). "State law errors may warrant *habeas* relief if the errors 'rise for some other reason to the level of a denial of rights protected by the United States Constitution.'" *Hoffner v. Bradshaw*, 622 F.3d 487, 495 (2010), quoting *Barclay v. Florida*, 463 U.S. 939, 957-58 (1983).

> State law issues are not subject to habeas review, and this Court can review the denial of [Petitioner's] motion for new trial only for constitutional error. To establish a constitutional due process claim, [Petitioner] must demonstrate that the trial court's denial of his motion for new trial was "so egregious" that it violated his right to a fundamentally fair trial. *See)*

*Pudelski v. Wilson*, 576 F.3d 595, 611 (6th Cir. 2009), citing *Estelle*, 502 U.S. at 67-68; *Fleming v. Metrish*, 556 F.3d 520, 535 (6th Cir. 2009); *Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004).

The Magistrate Judge concurs with Respondent's position as to Ground One. There is no federal constitutional rule prohibiting a state trial judge from *sua sponte* reconsidering a witness's credibility (assuming *arguendo* that accurately characterizes what happened here), particularly when the testimony is being evaluated for different purposes in different contexts.

The only authority to the contrary that Henry cites are *State v. Raber,* 134 Ohio St. 3d 350, 2012-Ohio-5636, and *Forest Grove School Dist., v. T.A.,* 638 F. 3d 1234 (9th Cir. 2011) (Graber,

J., dissenting) (Reply, ECF No. 17, PageID 808).

In *Raber* the Supreme Court of Ohio held "A trial court lacks authority to reconsider a **final judgment** in a criminal case." 2012-Ohio-5636, paragraph 1 of the syllabus, citing *State ex rel. White v. Junkin*, 80 Ohio St.3d 335, 338 (1997), and *State ex rel. Hansen v. Reed*, 63 Ohio St.3d 597 (1992) (as followed). But the trial judge's decision here to allow Henry to file a delayed motion for new trial was not embodied in a final judgment; it was clearly interlocutory. The portion of the *Forest Grove* decision cited by Henry is Judge Graber's dissent; the dispute between her and the majority is about the law of the case doctrine as it binds a lower court on remand. 638 F.3d at 1242. *Forest Grove* is not applicable here because the trial judge's decision did not relate to any credibility finding by the Second District before remand which would have become part of the law of the case.

Based on this analysis, Ground One does not state a claim under the United States Constitution and should be dismissed on that basis.

Grounds Two and Three, however, do purport to state claims under the Constitution, to wit, denial of due process of law in not granting a new trial on the basis of the evidence submitted. See *Fleming, Baze, and Pudelski, supra.* Grounds Two and Three should not be dismissed for failure to state a claim cognizable in habeas corpus.

**Procedural Default**

In Ground Three Henry asserts he received ineffective assistance of trial counsel in that his trial attorney did not advise him of the affair with Ms. Bibbs and this rendered his two no contest pleas in Case 584 voidable.

Respondent asserts Ground Three is procedurally defaulted because it was not properly presented to the Ohio courts (Return, ECF No. 15, PageID 791-93). Henry responds that he raised this claim in his petition for post-conviction relief (Reply, ECF No. 17, PageID 812-13). In his Motion to Amend Petition to Include Supplemental Argument, he asserted the legal proposition that "[i]neffective assistance of trial counsel is found to have affected the validity of a no contest plea when it precluded a defendant from entering his plea knowingly and voluntarily." (State Court Record, ECF No. 14, Ex. 45, PageID 317, citing *State v. McQueen*, No. 08 MA 24, 2008-Ohio-6589 (Ohio App. 7th Dist. Dec. 12, 2008)). He then made the factual assertion that on November 12, 2003, attorney O'Brien concealed from his client and the trial court an "*Owen* violation." *Id.* (emphasis in original), citing *Disciplinary Counsel v. Owen*, 143 Ohio St. 3d 323, 2014-Ohio-4597.

Henry's post-conviction petition was summarily denied on November 8, 2016 (Entry, State Court Record, ECF No. 14, PageID 318). Henry raised only one assignment of error on appeal, to wit, "The trial court violated Appellant's 14th Amendment right to equal protection of the law when it classified Appellant's 2953.21 petition as a Criminal Rule 32.1 motion and failed to issue findings of fact and conclusions of law." *Henry III*, 2017-Ohio-7427, ¶ 14. After remand, Henry again moved to add an additional argument to his petition, essentially again raising the failure of O'Brien to disclose the affair. (Motion for Leave to Amend Petition to Include Additional Argument, State Court Record, ECF No. 14, Ex. 73, PageID 445-46, relying on *State v. Gilliard*, 68 Ohio St. 3d 304.[1]). Without ever formally ruling on the motion to amend, the trial court considered it when entering judgment denying his petition for post-conviction relief (Entry, State Court Record, ECF No. 14, Ex. 74, PageID 447-49). At the very end of its ultimate decision on

---

[1] No such decision appears at the cited volume and page. The relevant case appears to be *State v. Gillard*, 78 Ohio St. 3d 548 (1997).

appeal, the Second District wrote:

> Finally, Henry argues near the end of his appellate brief that we should declare his no-contest plea in the drug-trafficking case "involuntary" and that we should dismiss both of the cases discussed above for "want of jurisdiction." Henry provides no factual or legal basis for these requests, and we see none.

*Henry IV*, 2019-Ohio-2261, ¶ 52.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124

S.Ct. 1847, 158 L.Ed.2d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640 [(1991)]. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010) (*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
. . . .
Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).

Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin*, 785 F.2d at 138 ("the *Maupin* test"); accord: *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), quoting *Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002). A habeas petitioner

can overcome a procedural default by showing cause for the default and prejudice from the asserted error. *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

Ohio R.App.P. 16 requires that issues on which appellant seeks a ruling from the court of appeals must be embodied in assignments of error. Henry presented no assignment of error regarding the trial court's ruling on his claim that his no contest pleas were rendered voidable by O'Brien's conflict of interest. The Second District enforced that rule against him by declining to rule on the merits of that claim. The rule is an adequate and independent state ground of decision: Ohio has an obvious judicial economy interest in requiring the appropriate structuring of appeals to focus on the issues actually being raised. Indeed, the practice of the Sixth Circuit is parallel; it also will not consider on the merits a claim that has not been properly pleaded and briefed. Finally, Henry has not shown excusing cause and prejudice, or even attempted to do so in the portion of his Reply devoted to procedural default (ECF No. 17, PageID 812-13). Ground Three should therefore be dismissed as procedurally defaulted.

**The Merits of Henry's Ineffective Assistance of Trial Counsel Claim**

Henry's Second Ground for Relief claims his trial attorney labored under an actual conflict of interest by virtue of his affair with Erica Bibbs and that conflict adversely affected his performance. The last reasoned state court decision on that issue is *Henry IV*.[2] In deciding Henry's first and third assignments of error, Judge Hall wrote for the court:

> {¶ 21} In his first assignment of error, Henry challenges the trial court's denial of his new-trial motion.

---

[2] A habeas court is to review the last reasoned state court decision on any federal constitutional issue in a given case. Y*lst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

{¶ 22} "A trial court's decision on a Crim.R. 33 motion for new trial will not be reversed absent an abuse of discretion." *State v. Gillispie,* 2d Dist. Montgomery No. 24456, 2012-Ohio-1656, ¶ 31, citing *State v. Schiebel,* 55 Ohio St.3d 71, 564 N.E.2d 54 (1990), paragraph one of the syllabus; *State v. Matthews,* 81 Ohio St.3d 375, 378, 1998-Ohio 433, 691 N.E.2d 1041 (1998). "'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable." (Citation omitted.) *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990)." *State v. DeVaughns*, 2018-Ohio-1421, ¶ 15, 110 N.E.3d 922 (2d Dist.).

{¶ 23} In support of his motion for leave to file a motion for a new trial, Henry submitted his own affidavit and his own supplemental affidavit, which essentially stated his "ex-fiancée" Erica Bibbs informed him in 2016 that she had an affair with his trial attorney "leading up to and during my June 2003 jury trial." He also submitted an affidavit from Erica Bibbs which stated: "I Erica Bibbs, aver and attest to the following * * * before and during my ex fiancé and my children's father, (Anjuan Henry), June 2003 jury trial, I was engaged in a romantic relationship with his attorney."

{¶ 24} On remand, the trial court conducted a hearing on February 15, 2018 confined to the issue of whether Henry had been unavoidably prevented from discovering the facts upon which his motion for a new trial was based, and therefore whether he should be granted leave to file the new trial motion. Erica Bibbs was the only witness Henry called at that hearing. She testified that she had a romantic, intimate relationship with Henry's 2003 trial counsel, Daniel L. O'Brien, before and during the 2003 trial. (Transcript, February 15, 2018, at 12.) She said she was engaged to Henry at the time. *Id*. She was engaged to Henry twice, the first time in 1999 during Henry's first trial and then "we lost contact for a while" and then got reengaged "while he was locked up again." (*Id*. at 16). The reengagement was "probably 2002 maybe, give or take," while he was in prison. *(Id*.) Bibbs said that he did not give her a ring for the reengagement but "we talked about it over the phone." (*Id*. at 17). (For context, as previously noted, Henry has continuously been in prison, except when transported in custody for various court appearances, since September 2000.) Before that he was "on the run." (*Id*. at 18).

{¶ 25} Bibbs also testified that the relationship with the attorney started in the "middle of 2000," (*Id*. at 17), "like August or something like that of 2000." (*Id*. at 28). This was about the time that Henry was on the run, then he was caught and then went to

prison. Bibbs could not put a number on the times she and the attorney saw each other stating "20,30,40,50" times. (*Id*. at 19). They went to restaurants and hotels but she could only name one restaurant, where she met the attorney's brother, and one hotel where they went in 2000. (*Id*. 20-21). She recalled: "From 2000 to 2005 we were together about, I don't know endless amounts of time." (Id. at 20).

{¶ 26} Henry is the father of two of Bibbs' children, a boy born in 1998 and a girl born in 1999. (*Id*. at 28). Bibbs said they first became engaged in 1999. (*Id*. at 27). When asked when this engagement ended, she said, "I wasn't sure. We still were communicating." (*Id*.). And when asked if she believed the engagement was over when the relationship with the attorney began, she said, "Honestly, I didn't think about it." (*Id*. at 29).

{¶ 27} During the time Henry was in prison, Bibbs also had romantic relationships with two other men. The first began around the "end of 2003, 2004" and was "on and off." (*Id*. at 43). She had a child from that relationship in early August 2004. (*Id*. at 44). That relationship lasted until 2008. (*Id*. at 43). The second other relationship was from 2009 until 2012. (*Id*. at 44).

{¶ 28} During all the time Henry was in prison, Bibbs never went to visit him. (*Id*. at 36). She never took the children to visit him. *(Id*.). She would provide him with commissary money, books, and pictures of the children. (*Id*. at 35). Their communication was by mail for about the first half of his sentence and then some phone calls. (*Id*. at 36-37).

{¶ 29} Finally, she said that the attorney would sometimes state that he needed more money for Henry's representation, but he never got any more money. (*Id*. at 38-39). The attorney never said why he was still representing Henry without getting more money. (*Id*.). When asked if she thought that was because she was continuing in a relationship with the attorney, she said, "Honestly, I didn't think about it." (*Id*.).

{¶ 30} Bibbs did not offer any testimony about the attorney's conduct that might have related to representation or deficiency during the June 2003 trial, or for that matter, related to the November 2003 pleas in the trafficking case.

{¶ 31} We observe that if Bibbs' testimony is taken at face value, she was engaged to Henry in 1999, "lost contact" and was reengaged in 2002. The relationship with the attorney, beginning about August

2000, was therefore ongoing before Bibbs was reengaged in 2002. There was no testimony that Bibbs informed the attorney that she had become reengaged.

{¶ 32} Henry argues he has shown that the attorney had a conflict of interest during the 2003 trial because his attorney was in a romantic relationship with Bibbs and that prejudice is presumed so he does not have to prove the conflict negatively affected the attorney's representation. We disagree.

{¶ 33} As to the romantic relationship with Bibbs, the only evidence about the alleged affair was at the February 15, 2018 hearing when Bibbs was the only witness. At the beginning of that hearing, it was made explicitly clear that the hearing was to address Henry's motion for leave to file a motion for a new trial and whether Henry was unavoidably delayed in the discovery of the evidence that he would use to support the motion for a new trial. It was not a merits hearing on the motion for a new trial. At the conclusion of the hearing, the trial court ruled that leave to file a motion for a new trial was granted. The April 23, 2018 proceeding was the hearing on the motion for a new trial. Henry did not present any evidence, apparently because he believed, and he now argues, that an attorney's affair with his client's wife during the representation is necessarily a conflict of interest and prejudicial per se.

{¶ 34} Despite the fact that Henry introduced no evidence at the merits hearing, the trial court nonetheless considered the testimony of Bibbs and the affidavits that had been filed. It reasoned: "Having reviewed the affidavits and the testimony of Ms. Bibbs and considering the lack of any further testimony at the hearing on the merits of the defendant's motion for a new trial, the Court finds a lack of credibility in regards to the affidavits and the testimony." (Case No. 99-CR-296, Doc. #17 at 3). The trial court also indicated that it was unclear whether Bibbs was Henry's fiancée at the time of the 2003 trial and that her assertion that she had always been his fiancée was contradicted by her affidavit referring to herself as an ex-fiancée. (*Id*.). The court concluded that the defendant had failed to meet his burden to show that there was an irregularity by way of conflict of interest at his trial. (*Id*. at 3).

{¶ 35} The trial court's preceding conclusion was not unreasonable and was supported by the record. Henry had been in prison since November 2000. Bibbs said she had been engaged to him in 1999 but "lost contact," and claimed that they got re-engaged over the phone sometime in 2002. As of that time, Henry was in prison and would have remained in prison for at least four more years on the

unrelated possession conviction regardless of what happened in the two cases now on appeal. As of her 2018 testimony, Bibbs had never visited Henry in prison. Henry did not testify to corroborate any of her testimony. It is apparent that the trial court doubted her credibility. Accordingly, we determine the trial court did not abuse its discretion by determining Henry had not demonstrated a conflict of interest, and this determination alone is enough for us to conclude that the trial court did not err by overruling the motion for a new trial.

{¶ 36} It is Henry's contention that a clandestine affair by his attorney with his fiancée during his trial automatically constituted a conflict of interest and that conflict of interest automatically constituted prejudice. He relies principally on *Disciplinary Counsel v. Owen*, 142 Ohio St. 3d 323, 2014-Ohio-4597, 30 N.E.3d 910. Attorney Owen represented Robert Caulley after Caulley confessed to killing his parents. Caulley was charged with two counts of aggravated murder with death-penalty specifications and other charges. Caulley's wife began working on the case in Owen's office. Owen and Caulley's wife began a sexual relationship shortly before and during the trial. The relationship lasted for about a year. *Disciplinary Counsel v. Owen* was a disciplinary case against Owen in which the Supreme Court said that "a lawyer's sexual relationship with the spouse of a current client creates an inherent conflict of interest." *Id.* at ¶ 29. As a result, Owen was found to have violated several disciplinary rules and was suspended from the practice of law for two years.

{¶ 37} Because *Owen* was a disciplinary case, it did not deal with the viability of the client's conviction and the impact, if any, the attorney's relationship with his client' wife had on the trial. And although the *Owen* court said that a sexual relationship with a client's wife violated the client's right to effective assistance of counsel, id. at ¶ 32, that expression was unnecessary and irrelevant to the disciplinary question of whether Owen violated disciplinary rules by his actions. Therefore, the sentence is dicta. Furthermore, no matter how unethical or repugnant we may view the attorney's alleged conduct, the viability of the client's verdict in the Owen case was correctly analyzed in the underlying case regarding Caulley's motion for a new trial, *State v. Caulley,* 10th Dist. Franklin No. 12AP-100, 2012-Ohio-2649, ¶ 19, aff'd, 136 Ohio St. 3d 325, 2013-Ohio-3673, 995 N.E.2d 227. In *Caulley*, the Tenth District found an actual conflict of interest where a defendant's attorney had an affair with the defendant's wife while representing the defendant at trial. However, the Tenth District proceeded to consider whether the conflict had adversely affected counsel's performance. *Id.* at ¶ 22-

24. "In order to satisfy a claim of ineffective assistance of counsel based on a conflict of interest, a criminal defendant must demonstrate that an actual conflict of interest adversely affected trial counsel's performance. *State v. Alexander,* 10th Dist. No. 05AP-192, 2006-Ohio-1298, ¶ 20, citing *State v. Keith*, 79 Ohio St.3d 514, 535, 1997- Ohio 367, 684 N.E.2d 47 (1997)." *Id*. Ultimately, the Tenth District found no abuse of discretion in the trial court's determination that counsel's division of loyalties did adversely affect counsel's performance, and that was the basis upon which the new trial was granted. *Id*. In particular though, the Tenth District cited "significant testimony indicating that trial counsel spent substantial time with [the defendant's wife] during the trial when he should have been preparing for trial." *Id*. at ¶ 24.

{¶ 38} In light of the persuasive authority of *Caulley*, we agree that an attorney's sexual relationship with his client's wife during the representation presents an actual conflict of interest, but we also agree that to obtain a new trial a defendant must further demonstrate that the conflict adversely affected trial counsel's performance. Henry's evidence fails on both fronts. No matter how the on-and-off connection between Henry and Bibbs is construed, and whenever it took place, on this record we fail to see how the described liaison between Bibbs, who for 18 years has never visited Henry in prison and who had multiple intimate partners during the interim, is in the same position as the defendant's wife in Caulley with whom his lawyer was having an intimate relationship. So, in addition to the trial court finding Henry did not prove an actual conflict of interest, we determine that the relationship here is insufficient to automatically impose an actual conflict of interest as recognized in Caulley. In addition, there is no evidence whatsoever that any relationship between Bibbs and Henry's trial counsel adversely affected trial counsel's performance.

{¶ 39} In his brief, Henry also complains that the trial court's decision overruling the motion for a new trial referred to the evaluation factors set forth in *State v. Calhoun,* 86 Ohio St.3d 279, 1999- Ohio 102, 714 N.E.2d 905 (1999). Henry argues that the "*Calhoun* factors do not apply to live testimony." (Brief at 6). But the materials before the court included previously submitted affidavits, testimony from Erica Bibbs presented only at the hearing on the motion for leave to file the new trial, and legal arguments. The trial court stated that "[i]n assessing the credibility of the affidavits, the court considered the factors set forth in *State v. Calhoun.*" (Emphasis added). The court also evaluated the credibility of Erica Bibbs' live testimony but did not suggest that evaluation was based on the *Calhoun* factors. We need not address

whether some or all of the *Calhoun* factors are also valuable tools to assess live testimony because that is not what happened here. Henry's *Calhoun* argument raises no error.

{¶ 40} Henry also complains that the trial court stated in its *Calhoun*-factor evaluation portion of the decision that "[t]his judge is the same judge who presided over the trial and the plea." Henry says that "Judge Parrott of Union County presided over the trial, not Judge O'Neill." (Brief at 6). Henry has not caused those historical portions of the record to be transmitted for our review. Nevertheless, assuming that Judge Parrott did preside over the July 2003 trial, that does not mean that Judge O'Neill did not preside over the May 2000 jury trial, the November 2003 pleas, or the February 2000 jury trial where Henry was jointly tried with his accomplice, Terrance Martin, which resulted in a hung jury. *State v. Martin*, 2d Dist. Clark No. 2000 CA 77, 2002-Ohio-3301. We do not doubt that Judge O'Neill is thoroughly familiar with the circumstances of this case from the multitude of pleadings, trials, pleas, and appeals spanning almost 20 years. If Judge O'Neil's recollection of the 2003 trial is mistaken, Henry points to no error that resulted from this misstatement.

{¶ 41} The first assignment of error is overruled.

{¶ 42} In his third assignment of error, Henry contends the trial court erred in denying his petition for post-conviction relief in the drug-trafficking case. He argues that his trial counsel should have informed the trial court of a conflict of interest created by the alleged affair. He also asserts that the conflict of interest could not be "waived," that affidavits he submitted were credible, and that his no-contest plea to drug trafficking was invalid because it was tainted by his attorney's conflict of interest.

{¶ 43} Upon review, we find Henry's third assignment of error to be without merit. As a threshold matter, the record does not reflect that the trial court held an evidentiary hearing on Henry's petition for post-conviction relief. The February 15, 2018 and April 23, 2018 transcripts in the record pertained only to the new-trial motion and were filed in the drug-possession case. In its entry denying post-conviction relief, the trial court did briefly mention Bibbs' testimony in connection with the new-trial motion. The fact remains, however, that the trial court's docket does not reflect a hearing on Henry's petition for post-conviction relief. Therefore, we are not confronted with the issue discussed above regarding the *Crowder* notice to the public defender, and Henry makes no such argument. See *State v. Simons*, 2d Dist. Champaign No. 2013 CA 5, 2013-Ohio-3654, ¶ 35 (recognizing that "the trial court is not required to notify the public

defender of an indigent petitioner's post-conviction proceedings unless it first concludes that the petitioner is entitled to an evidentiary hearing").

{¶ 44} As for Henry's claims about the credibility of the affidavits he submitted, we see no error in the trial court's ruling even if we assume, arguendo, that Henry's attorney did have an affair with his fiancée while representing him. When addressing the alleged affair and possible ineffective assistance of counsel, the trial court noted that counsel had negotiated a plea resulting in an aggregate ten-year sentence to be served concurrently with a longer sentence in the drug-possession case. The result was that Henry would serve no additional prison time as a result of his trafficking convictions, and that sentence has now expired. In light of this relatively favorable outcome, the trial court held that Henry had failed to make a sufficient showing of a denial or infringement of his rights so as to render his conviction void or voidable under the Ohio or United States Constitution.

{¶ 45} We review a trial court's denial of a post-conviction relief petition without a hearing for an abuse of discretion. *Simons* at ¶ 13. A trial court may dismiss a petition for post-conviction relief without a hearing "where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." *Calhoun*, 86 Ohio St.3d 279, 1999-Ohio 102, 714 N.E.2d 905, at paragraph two of the syllabus. When a petition alleges ineffective assistance of counsel, the petitioner typically bears the burden to submit documentary evidence containing sufficient operative facts to show deficient performance and prejudice. *State v. Cox*, 2d Dist. Montgomery No. 26136, 2015-Ohio-894, ¶ 8. In the context of an ineffective-assistance claim, ordinarily prejudice exists where "there is a reasonable probability that, but for counsel's deficient performance, the outcome would have been different." *State v. Wayne,* 2d Dist. Montgomery No. 25243, 2013-Ohio-5060, ¶ 22. Where a defendant does not demonstrate how he was prejudiced by counsel's performance, he fails to establish substantive grounds for relief and his petition for post-conviction relief may be denied without a hearing. *State v. Pianowski,* 2d Dist. Montgomery No. 25369, 2013-Ohio-2764, ¶ 31.

{¶ 46} When an ineffective-assistance claim involves an alleged conflict of interest, the foregoing standards are slightly different. Prejudice will be presumed if an appellant establishes an "actual conflict of interest" provided that it "adversely affected his lawyer's performance." *State v. Keith,* 79 Ohio St.3d 514, 535, 1997- Ohio

367, 684 N.E.2d 47 (1997), citing *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) and *State v. Manross,* 40 Ohio St.3d 180, 182, 532 N.E.2d 735 (1988). In essence, an actual conflict of interest which causes deficient performance results in the prejudice prong of ineffective assistance being satisfied. The United States Supreme Court addressed this issue in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) as follows:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf. *United States v. Morrison,* 449 U.S. 361, 364-365, 101 S.Ct. 665, 667-668, 66 L.Ed.2d 564 (1981). The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.
>
> In certain Sixth Amendment contexts, prejudice is presumed. Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So are various kinds of state interference with counsel's assistance. See *United States v. Cronic*, 466 U.S., at 659, and n. 25, 104 S.Ct., at 2046-2047, and n. 25. Prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost. 466 U.S., at 658, 104 S.Ct., at 2046. Moreover, such circumstances involve impairments of the Sixth Amendment right that are easy to identify and, for that reason and because the prosecution is directly responsible, easy for the government to prevent.
>
> One type of actual ineffectiveness claim warrants a similar, though more limited, presumption of prejudice. In *Cuyler v. Sullivan,* 446 U.S., at 345-350, 100 S.Ct., at 1716-1719, the Court held that prejudice is presumed when counsel is burdened by an actual conflict of interest. In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is

difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts, see, e.g., Fed.Rule Crim.Proc. 44(c), it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest. Even so, the rule is not quite the per se rule of prejudice that exists for the Sixth Amendment claims mentioned above. Prejudice is presumed only if the defendant demonstrates that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan, supra*, 446 U.S., at 350, 348, 100 S.Ct., at 1719, 1718 (footnote omitted).

(Emphasis added.) *Id*. at 691-92.

{¶ 47} Here Henry makes no effort to show actual prejudice resulting from trial counsel's performance in connection with his no-contest pleas. He argues that his attorney failed to reveal the alleged affair at the time of his plea, that an actual conflict of interest resulting from the affair could not be waived, and that prejudice was not required to be shown because it is presumed. We disagree.

{¶ 48} We refer again to *State v. Caulley,* as analyzed above. Although the Tenth District found an actual conflict of interest, it necessarily, consistent with *Cuyler v. Sullivan*, still proceeded to consider whether the conflict had adversely affected counsel's performance. *Caulley* at ¶ 22-24. The *Cuyler* and *Caulley* requirement that an adverse effect on performance must be demonstrated applies to Henry's petition for post-conviction relief just as the requirement applied to the motion for a new trial. Because there is nothing in Henry's petition and attachments that suggests an adverse effect on counsel's performance, Henry has failed to demonstrate prejudice and his petition was correctly denied without a hearing.

{¶ 49} We also reiterate the distinction that Bibbs was not Henry's wife and, whatever she was to Bibbs, we conclude the record does not demonstrate an automatic conflict of interest. And if there was a conflict of interest, it did not automatically result in prejudice. *See, e.g.*, *Barentine v. United States,* 728 F. Supp. 1241, 1252 (W.D.N.C.), *aff'd*, 908 F.2d 968 (4th Cir.1990) (finding "the

potential for a conflict of interest" where an attorney had an affair with his client's fiancée or girlfriend while representing the client).

{¶ 50} We further observe that Henry pled no-contest rather than going to trial, and he cites no evidence to suggest that the alleged affair adversely affected his attorney's performance in connection with his plea and sentencing. Therefore, we see no basis for a finding of presumed prejudice even if we were to accept that an actual conflict of interest existed. That being so, the trial court did not err in finding that Henry failed to establish substantive grounds for relief.

{¶51} The third assignment of error is overruled.

*Henry IV*, 2019-Ohio-1256.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

Henry's argument is that the quoted decision of the Second District is "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings." (Reply, ECF No. 17, PageID 797). He sets forth his argument under five headings, each of which will be discussed separately.

**Timeline of the Affair Between Ms. Bibbs and Trial Counsel**

Henry takes issue with the Second District's finding that Bibbs' affair with O'Brien began "about August 2000." *Henry*, 2019-Ohio-1256, ¶ 31. The actual testimony was as follows

Q. (By Clark County Assistant Prosecutor Farley) Okay. And how did your relationship with Mr. O'Brien start?

A. It started in, like, the middle of 2000. He began complimenting me often, asking me out on dates, saying he wished he had someone in his corner like I was in Mr. Henry's corner.

* * *

Q. And when did you -- in 2000 was after Mr. Henry had been sentenced to prison the first time.

A. I'm not sure. I don't remember.

Q. You don't remember.

A. He went to court a bunch of times around that time.

Q. And you don't recall in relation to when he was sentenced to prison as to when this relationship allegedly began.

A. He did go to prison because he was on the run, and then they caught him and he did go to prison.

* * *

Q. So it was after he went to prison that this communication began with Mr. O'Brien.

A. No, it was before he went to prison.

Q. When?

A. It was in 2000.

Q. Somewhere in those 12 months?

A. No, it was around the middle of 2000.

(Hearing Tr., State Court Record 14-2, PageID 708-10.)

Later in the hearing Judge O'Neill questioned Ms. Bibbs:

> THE COURT: So was there any relationship between you and Mr. O'Brien during the first trial in '99?
>
> THE WITNESS: No, our relationship started the middle of, maybe, like August or something like that of 2000.
>
> THE COURT: After the Defendant went to prison the first time?
>
> THE WITNESS: I don't really remember when he went -- no, actually, it started before he went to prison. And I know this because -- and I'm positive because he was on the run. And I won't incriminate myself, but I remember he got mad because I went to go visit him.
>
> THE COURT: Who got mad?
>
> THE WITNESS: Mr. O'Brien got mad because I went to visit Anjuan.
>
> THE COURT: When was that?
>
> THE WITNESS: When Anjuan was on the run. So that's how I know it was before.
>
> THE COURT: So you started seeing Mr. O'Brien in 2000.
>
> THE WITNESS: Yes.
>
> THE COURT: Around August of 2000?
>
> THE WITNESS: Give or take, yes.
>
> THE COURT: Was this while Mr. Henry was on the run or before he went on the run?
>
> THE WITNESS: It was before he went on the run.
>
> THE COURT: And you saw Mr. Henry while he was on the run.
>
> THE WITNESS: Yes.

THE COURT: Mr. O'Brien was upset at you about that?

THE WITNESS: He was.

THE COURT: You didn't tell Mr. Henry about Mr. O'Brien at that time?

THE WITNESS: No, I didn't. He had no idea.

THE COURT: When you started seeing Mr. O'Brien, were you under the impression that your engagement relationship was over?

THE WITNESS: Honestly, I didn't think about it.

THE COURT: You didn't think about it.

* * *

THE COURT: So after you got back from seeing the Defendant, you went out with Mr. O'Brien.

THE WITNESS: Correct. He came over to my stepmom's to pick me up.

THE COURT: And you started seeing Mr. O'Brien around August of 2000. Is that correct?

THE WITNESS: (Nods head.)

THE COURT: You weren't sure of the exact month.

THE WITNESS: Correct. Yeah, my daughter, she wasn't even 1 yet; and she was born in December, so that's how I know it was towards the end.

THE COURT: Towards the end of the year.

(Hearing Tr., State Court Record, ECF 14-2, PageID 719-22).

From this testimony, the Magistrate Judge concludes the Second District's finding that the affair started "around August" is not an unreasonable determination of the facts based on the evidence presented.

**Purpose of the February [2018] Hearing**

Henry objects to the Second District's conclusion that the sole purpose of the February 2018 hearing was "to determine whether Henry had been prevented from discovering the evidence supporting his new trial motion sooner" than April 2016 (Reply, ECF No. 17, PageID 801). The objected-to holding is

> On remand, the trial court conducted a hearing on February 15, 2018 confined to the issue of whether Henry had been unavoidably prevented from discovering the facts upon which his motion for a new trial was based, and therefore whether he should be granted leave to file the new trial motion.

*Henry IV*, 2019-Ohio-1256, ¶ 24. Henry argues instead, "that the February hearing was dual-purpose; and that in addition to the issue of unavoidable prevention, the issue of credibility was also up for resolution." (Reply, ECF No. 17, PageID 801).

When a defendant fails to file a motion for new trial within fourteen days of the verdict, he or she must first obtain leave of court to file such a motion. Ohio R.Crim.P. 33(B). To obtain leave, the defendant must show "by clear and convincing proof that the defendant was unavoidably prevented from filing his motion for a new trial[.]" *Id.*

Of course, any time a court holds a hearing in which it considers evidence, and particularly oral testimony, it must determine the credibility of the evidence. In this case, the trial court had denied the Henry's motion for leave to file a delayed motion for new trial without a hearing. The Second District remanded for a hearing on whether Henry should be permitted to file a delayed motion for new trial.

> Therefore, based on the record before us, we conclude that the trial court abused its discretion in overruling Henry's motion for leave without a hearing. A remand is necessary for the trial court to consider, in the first instance, whether the affidavits submitted by

Henry in support of his motion for leave credibly establish, by clear and convincing proof, that he was unavoidably prevented from discovering the evidence of the affair between his trial counsel and his ex-fiancé.

*Henry III*, 2017-Ohio-7426, ¶ 20.

Having read the testimony at the February 2018 hearing, the Magistrate Judge notes that there was no evidence before Judge O'Neill contradicting Ms. Bibbs' testimony that she first told Henry in April 2016 about the affair. While there may exist evidence somewhere contradicting that testimony, it was not presented in that hearing. Thus the outcome – that Henry should be allowed to file his delayed motion for new trial – seems clear. But Judge O'Neill was not tasked at that hearing with deciding any other question, *e.g.*, whether anything else to which Erica Bibbs was credible or not. If I tell you my name is X and I present photographic identification, you will probably find my self-identification credible. If I go on to testify the moon is made of green cheese, you would not likely find that testimony credible.

Henry cites certain Second District decisions in which trial courts made findings about the credibility of the new evidence as well as whether its discovery had been unavoidably prevented (Reply, ECF No. 17, PageID 802-03).

In *State v. Risdan*, No. 25234, 2013-Ohio-1823 (Ohio App. 2nd Dist., May 9, 2013), the court upheld denial of a motion for leave to file a delayed motion for new trial without a hearing because the newly-discovered evidence was itself not credible and appellant had not in any case proven that he was unavoidably prevented from obtaining it. *Id*. at ¶ 25. *Risdan* does not suggest that it is improper to bifurcate the two questions.

In *State v. Mackey*, 2018-Ohio-516, 108 N.E.3d 241 (Ohio App. 2nd Dist. 2018), the court was concerned not with a delayed motion for new trial, but with whether a defendant could file a

late petition for post-conviction relief under Ohio Revised Code § 2953.21 and 2953.23. The latter statute permits a late filing of a post-conviction petition upon proof similar to that required for a delayed motion for new trial – proof of unavoidable prevention of timely discovery. As to credibility, the court held:

> The trial court appears to have also disbelieved the substance of the recantations in the affidavits. Although the narrow issue before the trial court was whether Mackey had been unavoidably prevented from obtaining the affidavits from Peterson and Buggs, we see no reason why the trial court also could not consider their recantations to the extent as it reflects on the credibility of the hearing testimony. This is not a case where the trial court ruled based solely on paper affidavits. Rather, the trial court held an evidentiary hearing during which it heard Peterson and Buggs explain what led them to recant their trial testimony. On this record, we cannot say that the trial court's conclusion, that Mackey failed to prove that he was unavoidably prevented from obtaining the evidence on which he relies, was unreasonable.

*Mackey*, 2018-Ohio-516, ¶ 11 (footnote omitted).

*Mackey* in fact supports what happened here. In that case the trial judge, having heard the witnesses live, found them not credible for both purposes. Here Judge O'Neill heard Ms. Bibbs and found her credible as to when she told Henry about the affair, but not credible as to the substantive portions of her testimony, e.g., when she was engaged to Henry.

In the midst of this argument in his Reply, Henry asserts he had a due process right "to establish the credibility of his newly discovered evidence at the February hearing[.]" (ECF No. 17, PageID 803). There is no such due process right. The United States Constitution does not regulate the state court process for deciding whether to grant a criminal defendant a new trial, much less require that all relevant questions be dealt with in one hearing.[3]

---

[3] Henry also asserts he had a right to have admitted in evidence the photographs Ms. Bibbs provided which purportedly documented her affair with O'Brien. Henry's Petition does not include a claim to this effect and new claims cannot be added in a reply. *Jalowiec v. Bradshaw*, 657 F.3d 293 (6th Cir. 2011), *citing Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005).

**Credibility**

In this section of the Reply, Henry begins by arguing that Judge O'Neill's decision on the new trial motion is not entitled to deference because he previously found Ms. Bibbs' testimony credible (ECF No. 17, PageID 803-04). It is, of course, the Second District's decision affirming Judge O'Neill which is being directly reviewed here and, as pointed out by that Court and above, the questions at issue in the two hearings were different.

Henry objects to the Second District's conclusion that it was not unreasonable for the trial court to question the credibility of Bibbs' claim to have been engaged to Henry during the 2003 trial. Bibbs' actual testimony was that she and Henry got engaged in 1999, "lost contact," then became re-engaged over the telephone in 2002 and remained engaged although they never married, she never visited him in prison, she had an sexual relationship with O'Brien from 2000 to 2005 which included "numerous" "meetings," and she had "relationships" with two or three other men during that time, with one of whom she had a child. It is completely reasonable for a court to doubt, on this testimony, whether anything like an "engagement to be married" was in place between these two people.

Contrary to Henry's argument (Reply, ECF No. 17, PageID 805), Ms. Bibbs' asserted inability to name hotels and restaurants where she went with O'Brien and her asserted inability to remember the exact number of times she and O'Brien were together is immaterial. Neither of state courts seemed to question that there was a sexual relationship between Bibbs and O'Brien during the relevant time period. The question rather is the nature of the relationship between Bibbs and

Henry.

## Sufficiency of Ms. Bibbs and Petitioner's Relationship to Qualify As an Actual Conflict

Henry objects to what he claims was the Second District's determination that "the relationship here [between Ms. Bibbs and Petitioner] is insufficient to automatically impose an actual conflict of interest as recognized in *Caulley*." (Reply, ECF No. 17, PageID 807 (brackets in original). Here, as in other places in his Reply, Petitioner is loose with his use of quotation marks. What the Second District actually said was:

> It is Henry's contention that a clandestine affair by his attorney with his fiancée during his trial automatically constituted a conflict of interest and that conflict of interest automatically constituted prejudice. He relies principally on *Disciplinary Counsel v. Owen*, 142 Ohio St. 3d 323, 2014-Ohio-4597, 30 N.E.3d 910.

*Henry IV*, 2019-Ohio-1256, ¶ 36. The Second District then went on to discuss the fact that Attorney Owen's sexual relationship during representation of *Caulley* did not lead automatically to voiding his capital conviction for ineffective assistance of trial counsel; further nproof of prejudicial effect was required and found. Thus, *Caulley* does not stand for the proposition that whenever a trial attorney has a sexual relationship with a client's wife during representation, there is automatically prejudice satisfying the ineffective assistance of trial counsel standard. *Id*. at ¶¶ 37-38. And Bibbs was never Henry's wife.

## Adverse Performance on the Part of Trial Counsel in Connection with the Affair

Henry objects to the Second District's conclusion that "there is no evidence whatsoever

that any relationship between Bibbs and Henry's trial counsel adversely affected trial counsel's performance." *Henry IV*, 2019-Ohio-1256, ¶ 38. Henry asserts he will refer to such evidence in his Ground Two argument. (Reply, ECF No. 17, PageID 807.) At the referenced point in the Reply, he begins by discussing the trial judge's exclusion of photographs at the February hearing. *Id.* at PageID 809-10. Then as examples of adverse effect, he cites his claim that O'Brien "never had the drug evidence independently tested." *Id.* at PageID 810. However, he does not explain how the affair had any impact on not having the drugs independently tested.

Henry then claims O'Brien had a duty to disclose the affair to the trial court and move for a new trial on that basis. *Id.* at PageID 811, relying on *Gunner v. Welch*, 749 F.3d 511 (6th Cir. 2014). *Gunner* is completely inapposite; it held an appellate attorney has a duty to advise a client of filing deadlines for a petition for post-conviction relief. 749 F.3d at 519. The balance of the argument turns the question of prejudice on its head, assuming Henry would have been entitled to a new trial based on evidence of the affair, without any proof the affair adversely affected O'Brien's performance. But the Second District rejected, as had the Tenth District in *Caulley*, the proposition that prejudice from such an affair is conclusively presumed.

Henry's claim that he is entitled to a new trial and that the Second District's conclusion to the contrary is not entitled to deference is without merit.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that

the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not

be permitted to proceed *in forma pauperis*.


February 1, 2020.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS


Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.